CASSIDY & MCFADDEN ET AL VS SALINE COUNTY BANK.

Opinion delivered Sept. 26, 1907.

(104 S. W. Rep. 829).

1. *Amendment to Pleadings.*
   As provided by Mansf. Dig. § 5080, the court may any time amend pleadings so as to conform to proof provided the, claim or defense is not materially changed. In § 5084 supplemental pleadings are provided for material facts having occurred after the former pleading was filed. It was held that in a suit on an open account it was impossible to amend the complaint by showing a judgment obtained in another state on the same cause.

2. *Bonds—Liability.*
   A surety on a bond to dissolve an attachment takes his obligation in regard to the case as it stands at the time. Therefore the surety on a bond to dissolve given by defendant was not liable after the complaint was amended.

Error to the United States Court for the Central District of the Indian Territory; before Justice W. H. H. Clayton, March 14, 1906.

Action by the Saline County Bank against Cassidy & McFadden and others. Judgment for plaintiff, and defendants bring error. Reversed.

On July 12, 1902, plaintiff filed its complaint, and alleged that it was a nonresident of the Indian Territory, and a corporation organized under the laws of Arkansas; that the defendants, and each of them, are non-residents of Indian Territory; and that the defendant J. McFadden has money and property within the Central district of the Indian Territory. It alleged further that on the 28th day of November, 1899, the defendants, P. Cassidy and J. McFadden, as partners under the firm name of Cassidy & McFadden, were engaged in the railroad contracting business; that they opened an account with plaintiff; and that they are indebted to the plaintiff in the sum of two thousand dollars on an account for an overdraft, and have refused to pay the same. Wherefore plaintiff sues. On the same day an affidavit for attachment was filed, in which it is alleged that the State National Bank of South McAlester, Ind. Ter., is indebted to the defendants in the sum of $1,200, and prays for a writ of garnishment; that summons and order of attachment were issued and were served upon the defendant J. McFadden, and the writ of garnishment upon the State National Bank. On September 12, 1902, the defendant J. McFadden moved the court to require the plaintiff to set out in its complaint an itemized statement and account of the debt claimed to be due to the plaintiff by defendants, showing all of the transactions between the plaintiff and the defendants in full. On the same day the defendant J. McFadden filed his answer, and says that it is not true that he was engaged with the defendant P. Cassidy as a partner under the firm and partnership name of Cassidy & McFadden in the railroad contracting business; that it is not true that he himself, or that he and the said Cassidy, are indebted to the said plaintiff in the sum of $2,000, or any other sum; and that he was not at the times mentioned in the plaintiff's

complaint a partner of the defendant P. Cassidy.   On the 15th day of November, 1902, there was filed in said cause the bond of J. McFadden, as follows:   "Dissolving Bond.   That J. Mc-Fadden as principal, and the National Surety Company of New York as surety, do undertake unto the plaintiff, Saline County Bank, that the defendant J. McFadden shall perform the judgment of the court against him in this action, and shall pay to the plaintiff all such sums of money as may be adjudged against him herein.   Witness our hands this 29th day of November, 1902.   J. McFadden, Principal.   National Surety Co., by James Mandlebaum, Resident Vice President."   On the 19th day of June, 1903, there was filed in this cause by the plaintiff an amended complaint, alleging the same facts stated in the original complaint, and in addition the following:   "That plaintiff on the 14th day of November, 1902, obtained a judgment against the defendants herein on said overdraft, for the sum of one thousand six hundred and sixty-six dollars and ninety cents, in the District Court in and for the county of Pottowattomie in the territory of Oklahoma; that a copy of said judgment is herewith filed and asked to be made a part of this complaint; that said judgment is now in full force and effect, and has never been satisfied in whole or in part"—and attaches as a part of the complaint the judgment set up in said amended complaint.   On the same day the plaintiff filed its reply to defendants' answer, and on motion of the plaintiff the cause was continued.

On May 3, 1904, defendant filed motion to be permitted to withdraw his answer heretofore filed herein, which motion is as follows:   "Comes now defendant J. McFadden, and moves the court that he be allowed to withdraw from the files his answer to the amended complaint heretofore filed in this case, for the following reasons to wit:   (1)   That this answer was filed under the belief that plaintiff in his amended complaint was pleading a certain judgment recovered in the territory of

Oklahoma as evidence upon which to recover on the debt sued on herein; that, both parties having announced ready for trial in this case, statement of the case was made to the jury by the plaintiff's attorney, and thereupon defendant took issue with plaintiff's attorney as to the proper construction of plaintiff's amended complaint, and the court held that the amended complaint was a suit upon the judgment; that thereupon defendant asked leave of court to withdraw its annnouncement of ready for trial and moved the court to strike out the plaintiff's amended complaint upon the ground that same was not a proper amendment, and introduced a new cause of action; that it was agreed by all the parties to the case that the defendant might afterwards withdraw his said answer and file such motion as above indicated, that the court, having expressed his opinion upon this matter, stated said motion would thereupon be over-ruled and the case continued; that continuance of the case was thereupon entered, and a few days later defendant's attorneys requested of the court permission to withdraw said answer, and to file the motion above indicated; that the court stated he would prefer to have the attorneys for the plaintiff present when this was done, and Mr. J. A. Hale, one of the plaintiff's attorneys, requesting that we wait until the other attorneys were present, the matter was passed until the January, 1904, term of court; that prior to the said January, 1904, term. of court the defendants notified both attorneys for plaintiff that this matter would be called up and disposed of, but that defendants' attorneys were unable to procure the attendance of plaintiff's attorneys to settle said pleadings." On May 27, 1904, the motion of defendant to withdraw his answer to amended complaint was sustained by the court, to which plaintiff excepts, and on same day defendant files motion to strike from the files the amended complaint, as follows: "Comes the defendant, J. McFadden, and moves the court to strike from the files the amended complaint heretofore filed in this cause, for the reason

that said amended complaint alleges a new cause of action against this defendant, wholly differing from the original cause of action herein, and in said amended complaint seeks to recover upon a judgment rendered in the territory of Oklahoma upon the identical cause of action set out in the original complaint herein." On June 27, 1904, on motion of plaintiff, cause was continued until the next regular term. On January 3, 1905, the motion of defendant to strike out the amended complaint was overruled. Thereupon the defendant J. McFadden, without waiving his exceptions to the action of the court, in overruling his motion to strike from the files the amended complaint, answers said amended complaint as follows: "(1) That this court has no jurisdiction to try this cause upon the plaintiff's amended complaint, because the said amended complaint sets up a cause of action wholly new and distinct from the cause of action set out in plaintiff's original complaint, and because the court has no power to permit an amendment whereby the original cause of action sued on has been abandoned and a cause of action wholly new, separate, and distinct from the original cause of action, which has arisen since the filing of plaintiff's original complaint, has been substituted for said original complaint. (2) Further answering, defendant J. McFadden says that, if the judgment mentioned and set out in plaintiff's amended complaint was rendered as therein set out, the original cause of action sued on herein has been merged in said judgment, and that the plaintiff ought not to recover herein, because the judgment so rendered is a bar to this action." And on same day both parties announced ready for trial, and, a jury being waived, case was submitted to the court, who rendered a verdict for the plaintiff in the sum of $1,312 against the said defendant J. McFadden, and the firm of Cassidy & McFadden, and finds the issues in favor of the plaintiff and against the said defendants, and sustains the attachment and the garnishment, and renders judgment against J. McFadden and the firm of Cassidy &

McFadden jointly and severally, as principal, and against the said National Surety Company as surety for said sum of $1,312, and for costs.

On January 7, 1905, defendants filed motion for a new trial and in arrest of judgment. On January 13, 1905, an agreement was filed by the parties that the question of attachment, motion for new trial, and arrest of judgment, be continued. On May 27, 1905, motion was filed to set aside the judgment, on the ground that the defendant McFadden, at the time the trial was had and the judgment rendered, was dead. On May 29, 1905, said judgment was set aside, and on same day plaintiff moves that this cause be revived, and that a special administrator be appointed for the purposes of this action, and it was ordered by the court that said cause be revived, and that R. S. Cate, of South McAlester, be appointed special administrator, to defend for the defendant McFadden, and that this cause be continued. On December 11, 1905, it was ordered by the court that this cause be continued for want of service of the notice of the revival of this cause. On March 14, 1906, cause came on for trial, and thereupon R. S. Cate, as administrator of J. McFadden, deceased, adopts the pleadings heretofore filed herein, and saves the exceptions heretofore saved. Thereupon the case was tried before a jury, and under instructions from the court the jury returned from the box the following verdict: "We, the jury duly selected, impaneled, sworn, and charged to try the issues in the above-styled cause, do find for the plaintiff in the sum of $1,465. Andrew J. Turner, Foreman." And it appearing to the court that the attachment was issued in said action, and the order of garnishment issued herein and levied and served upon divers moneys in the hands of the State National Bank of South McAlester, Ind. Ter., and that thereafter bond was filed in said court by said defendant, J. McFadden, as principal, and the National Surety Company, as surety, and the court doth find that said attachment and garnishment proceedings

ought to be sustained, and the surety upon said bond to be held and required to pay said judgment. And it is therefore adjudged that the plaintiff have and recover judgment against, of, and from the defendants, R. S. Cate, special administrator of J. McFadden, and the firm of Cassidy & McFadden, jointly and severally as principal, and against the said National Surety Company as surety for the said sum of $1,465, and for costs, to which defendants except. On March 15, 1906, the defendant filed motion for a new trial herein, which was overruled by the court, and thereupon the National Surety Company filed a motion in arrest of judgment, and the court having heard the said motion doth overrule the same, to which defendants except. Defendants were allowed 60 days to file bill of exceptions, and the case was brought to this court by writ of error.

*Stuart & Gordon*, for plaintiffs in error.

*Blakeney & Maxey* and *R. A. Smith*, for defendant in error.

TOWNSEND, J. (after stating the facts as above). The plaintiff in error has filed eleven assignments of error, as follows: "(1) The court erred in overruling the motion of the defendant McFadden, and of R. S. Cate, as special administrator, to strike from the files plaintiff's amended complaint, to which ruling of the court defendants then and there excepted. (2) The court erred in permitting plaintiff to file its amended complaint, which introduced into this action a cause of action wholly distinct and separate from the original cause of action, which said cause of action has arisen since the commencement of this suit. (3) The court erred in allowing plaintiff to introduce in evidence a certified copy of a judgment rendered in the territory of Oklahoma in favor of the plaintiff and against the defendants Cassidy and McFadden. (4) The court erred in instructing the jury, peremptorily, to find their verdict in favor of the plaintiff in the sum of $1,465. (5) The court erred in overruling the motion of the defendants asking that the court

instruct the jury to return their verdict in favor of the defendants. (6) The court erred in rendering judgment in favor of the plaintiff and against the defendants; no service having been made herein upon P. Cassidy, he not having appeared in this action, and the judgment herein being rendered upon a cause of action wholly distinct and separate from the cause of action originally sued on herein, and arising after the commencement of the suit. (7) The court erred in admitting in evidence the bond of the defendant McFadden, signed by the National Surety Company, as surety. (8) The court erred in rendering judgment against the National Surety Company. (9) The court erred in holding that this cause stood for trial at the February term of the above court. (10) The court erred in overruling defendants' motion for a new trial. (11) The court erred in overruling the motion in arrest of judgment filed by the National Surety Company."

Plaintiff in error says: "In the argument of this case, it appears to us unnecessary to take up in detail each assignment of error. There are three points upon which a reversal of the judgment in this case is asked for: (1) The first, and upon principle the most important of these points is, that the trial court erred in allowing the plaintiff to obtain judgment upon a cause of action wholly different from that upon which this case was instituted, and in allowing plaintiff to so amend his complaint as to declare upon a judgment, instead of upon the open account originally sued on herein. (2) The second proposition is that if such a substitution of a cause of action should, in the opinion of this court, be permissible, as against the defendant, such substitution would be surely error as to the surety on a dissolving bond given at a time when the suit was upon open account, and a cause where the statute has provided that judgment may be rendered against such surety in the principal action without notice. (3) The court erred in holding that this cause stood for trial at the February term of court." Counsel

for plaintiff in error says:  The first, second, third, fourth, fifth, and sixth assignments of error all look to the first proposition above named.  The seventh, eighth, and eleventh assignments of error all look to the second proposition.  The ninth assignment of error goes to the third proposition, and the tenth assignment merely saves the points raised in the motion for a new trial, in which all of the above questions are presented.  He then proceeds to discuss, the first, second, third, fourth, fifth, sixth, and tenth assignments jointly upon the proposition first above named; the seventh, eighth, and eleventh assignments upon the second proposition; and the ninth assignment upon the third proposition.  In discussing the first proposition he suggests three interrogatories:  "(1)  Did the rendition of the judgment in Oklahoma merge the open account which was the basis of the suit in the Indian Territory?  (2)  If the open account was merged by the Oklahoma judgment, did the amended complaint, setting up such judgment, declare upon a new and independent cause of action?  (3)  If the Oklahoma judgment was a new and independent cause of action, did the court have authority to permit the plaintiff, over the protest of the defendants, to substitute a new cause of action in this case?"

In Freeman on Judgments (4th Ed.) § 215, it is said: "The cause of action thus established and permanently attested is said to merge into the judgment establishing it, upon the same principle that a simple contract merges into a specialty.  Courts, in order to give a proper and just effect to a judgment, sometimes look behind to see upon what it was founded, just as they would, in construing a statute, seek to ascertain the occasion and purpose of its enactment.  The cause of action, though it may be examined to aid in interpreting the judgment, can never again become the basis of a suit between the same parties.  It has lost its vitality.  It has expended its force and effect.  All its power to sustain rights and enforce liabilities has terminated in the judgment or decree.  It 'is drowned in the judg-

ment,' and must thenceforth be regarded as functus officio''—
and cites Barnes vs Gibbs, 31 N. J. Law, 317, 86 Am. Dec. 210,
and Bank of North America vs Wheeler, 28 Conn. 433, 73 Am.
Dec. 683.   Plaintiff in error contends that, the open account
sued on having been merged in the Oklahoma judgment, it is
plain that this judgment is a new cause of action, and cites
Foste vs Standard Life & Accident Ins. Co., 26 Or. 449, 38 Pac.
617.   In that case the court said: "This is an action by the
agent of the defendant to recover money alleged to be due as
commissions upon insurance premiums secured by him as such
agent.   The cause being at issue, a trial was had, at which
evidence was introduced and admitted, over the defendant's
objection, which tended to show that an account had been
stated between the parties.      *      *      *      The statute
provides that the court, in furtherance of justice, may, at any
time before the cause is submitted, allow a pleading to be
amended, when the amendment does not substantially change
the cause of action, by conforming it to the facts proved.   Hill's
Code, § 101.      *      *      *      An examination of the original
complaint discloses an evident intention on the part of the
pleader to declare upon an account for labor and services per-
formed by the plaintiff for the defendant, but, as amended, he
has alleged a stated account between them.   Courts should be
liberal in allowing amendments, and when the cause of action
is improperly set forth in the complaint, or a pleading is defective
in any respect, the court may, in its discretion, at any stage of
the case before the cause is submitted, authorize such amend-
ments as may be necessary to make the case as intended by the
original pleading, but not to insert a new and distinct cause
of action or defense.   Ford vs Ford, 53 Barb. (N. Y.) 525;
Davis vs Railroad Co., 110 N. Y. 646, 17 N. E. 733; Baldock vs
Atwood, 21 Or. 79, 26 Pac. 1058.      *      *      *      If it would
require precisely the same evidence to support the action after
an amendment as before, it cannot be said that a new cause of

action has been substituted thereby.    Lottman vs Barnett, 62 Mo. 159.    The converse of this rule must also be true, and therefore, if different evidence would be required to support the action after an amendment, it must be regarded as substituting a different cause of action."    The counsel for plaintiff in error then asks:    "Did the court have authority to permit the plaintiff, over the protest of the defendants, to substitute a new cause of action in this case?"    And cites first the statutes of the state of Arkansas regarding amendments (section 5080 of Mansfield's Digest of Statutes):    "The court may, at any time, in furtherance of justice, and upon such terms as may be proper amend any pleadings or proceedings by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case; or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved."    Then asks: "Does the substitution of the judgment in this case change substantially, the claim of the plaintiff?    While we have not been able to discover in the decisions of the Supreme Court of the state of Arkansas that the question here raised has been directly passed on, yet we find various cases in which the court has intimated that the cause of action cannot be changed." And says:    "In the case above cited of Foste vs Standard Life & Accident Ins. Co., 26 Or. 449, 38 Pac. 617, it was held error, where a suit had been brought for a certain sum of money as commissions, to allow an amendment stating that the amount sued for was found to be due on an account stated between the parties, and that defendant had promised to pay it, but did not do so."

The question presented is whether the amendment substituted another cause of action for that originally stated.    "An examination of the original complaint discloses an evident intention on the part of the pleader to declare upon an account

for labor and services performed by the plaintiff for the defendant, but, as amended, he has alleged a stated account between them. Courts should be liberal in allowing amendments, and when the cause of action is improperly set forth in the complaint, or a pleading is defective in any respect, the court may, in its discretion, at any stage of the case before the cause is submitted, authorize such amendments as may be necessary to make the case as intended by the original pleading, but not to insert a new and distinct cause of action or defense. Ford vs Ford, 53 Barb. (N. Y.) 525; Davis vs Railroad Co., 110 N.Y. 646, 17 N. E. 733; Baldock vs Atwood, 21 Or. 79, 26 Pac. 1058." In 1 Am. & Eng. Enc. Pl. & Pr. pp. 547, 548, it is said: "At common law the court had no power to allow the plaintiff to amend by introducing an entirely new and different cause of action. Nor could the defendant amend by setting up a new defense founded upon a transaction entirely different from that stated in the plea. But the last proposition has been disputed. The practice, even in those states where the Code provisions relating to amendments are identical, is not uniform, although the commonlaw rule is generally adhered to." The only decision from the Supreme Court of Arkansas to which we have been referred in this case is the case of St. Louis & San Francisco Ry. Co. vs Dodd, 59 Ark. 317, 27 S. W. 227, where an amendment was allowed to be made to the complaint over the objection of the defendant, while the jury were considering of their verdict, and, the same being assigned as error, the court say: "The ground of its contention is: The amendment converted the action from an action ex contractu to an action ex delicto. But this was not done. The amendment showed only a breach of the contract that the appellant entered into when it undertook to hold the property of the appellees as a warehouseman." It will thus be readily observed that not much assistance can be obtained from the decisions of the Arkansas Supreme Court upon the construction of the statutes regulating amendments.

Plaintiff in error contends that there can be no doubt, under the authorities, that the Oklahoma judgment, when pleaded by defendant, was a perfect defense to the suit of the plaintiff on the open account, and cites Bank of North America vs Wheeler, 28 Conn. 433, 73 Am. Dec. 683, in which it is held that the recovery of a judgment in one state is a bar to a further prosecution of the same cause of action by the same parties in another state, and that when suits are pending in different states upon the same cause of action the plaintiff must elect in which state he will proceed to final judgment. In discussing this question the court says: "The plaintiffs urge the inconvenience arising from holding the judgment in New York to be a defense in the present suit, in consequence of the loss of the security obtained by attachment in the latter. We are not however, at liberty to impair the effect which the Constitution and laws of the United States give to judgments rendered in the several states, although it may be attended with inconvenience, or even apparently unjust consequences."

In the case of Barnes vs Gibbs, 31 N. J. Law, 317, 86 Am. Dec. 210, the court says: "Nor does there seem to be much weight in the argument, ab inconvenienti, which was pressed upon the attention of the court. It is true that meritorious creditors might sometimes find it to their advantage to pursue their debtors with simultaneous suits in two or more states. But even in such case it cannot escape observation that the course suggested as beneficial to the creditor savors something of harshness, if not oppression, to the debtor. Practically, he is vexed twice or oftener for the same cause. And, on the other hand, when the claim sued on is unfounded, and a just defense exists, the right to institute co-existent suits in different jurisdictions, founded in the same subject, becomes an instrument of oppression, which it would be by no means prudent to place within the reach of rapacity or vindictiveness. The maxims of common justice seem to require that the judg-

ment should be considered as conclusive, both in favor of as well as against the debtor. But on this topic, also, I think the adjudications already rendered have occupied. the entire field of discussion. Andrews vs Montgomery, 19 Johns. (N. Y.) 162, 10 Am. Dec. 213; Baxley vs Linah, 16 Pa. 241, 55 Am. Dec. 494; Green vs Sarmienta, Fed. Cas. No. 5,760, 3 Wash. C. C. 17; Bank of U. S. vs Merchants' Bank, 7 Gill (Md.) 415; Bank of North Am. vs Wheeler, 28 Conn. 433, 73 Am. Dec. 683. The case certified calls for the opinion of this court on a second point, viz., whether, upon the assumption of a merger having taken place, the writ and pleadings in this case can be so amended as to transform the action from assumpsit to debt, and to permit the judgment obtained in New York to become the foundation of the suit. Allowing the utmost amplitude to the power of this court to alter forms and correct errors, the present application seems to be much beyond the scope of such power. It is obvious the proposition is not to amend defects, but to substitute one cause of action for another. Besides, even if the court should permit the proposed commutation to be made, it would not avail the plaintiffs, because the ground of action sought to be substituted has arisen since the commencement of this suit. No record could be framed which would support a judgment exhibiting a cause of action accruing to the plaintiffs after the purchase of his writ. Such defect would be pleadable in abatement, or at the trial the plaintiffs could be nonsuited, or if it was disclosed in the declaration the defendants might demur, or move in arrest of judgment, or assign it for error. Rhodes vs Gibbs, 5 Esp. 163; Hay vs Kitchin, 1 Wils. 171; Pugh vs Robinson, 1 Term Rep. 116; Egles vs Vale, Cro. Jac. 69; Cheetham vs Lewis, 3 Johns. 42. In my opinion the Circuit Court should be advised that the plea demurred to should be sustained, and that the amendment proposed ought not to be allowed."

In Swedish-American Nat. Bank vs Dickinson Co., et al., 6 N. D. 222, 69 N. W. 455, 49 L. R. A. 285, the court say:

"The sole question of law at issue on this appeal relates to the extent of the power of the District Court to allow a plaintiff to file a supplemental complaint. The cause of action set forth in that pleading in this case were promissory notes. While this suit was pending the plaintiff recovered in the state of Minnesota, against the same defendants, a judgment upon the identical causes of action embraced in the complaint.   *   *   * It has long been the doctrine that a final judgment merges, within the jurisdiction in which it is rendered, the original cause of action on which it is founded. 1 Freem. Judgm. §§ 215-217; 15 Am. & Eng. Enc. Law, 336. This rule applies in this country to judgments rendered in the different states, on the ground that, under the provisions of the federal Constitution, they are practically assimilated to domestic judgments. 1 Freem. Judgm. § 221; 15 Am. & Eng. Enc. Law, 341; Barnes vs Gibbs, 31 N. J. Law, 317, 86 Am. Dec. 210; Bank of U. S. vs Merchants' Bank of Baltimore, 7 Gill (Md.) 415; Bank vs Wheeler, 28 Conn. 433, 73 Am. Dec. 683; Rogers vs Odell, 39 N. H. 452; McGilvray vs Avery, 30 Vt. 538; Child vs Powder Works, 45 N. H. 547; 2 Black, Judgm. § 864.   *   *   * From these elementary principles to which we have referred, we are forced to deduce the conclusion that, the moment the judgment was recovered in Minnesota, the plaintiff's causes of action on the notes sued upon were utterly extinguished. This judgment would, if pleaded by the defendants, constitute a complete bar to the further prosecution of the action. 15 Am. & Eng. Enc. Law, 341, note 5; Rogers vs Odell, 39 N. H. 452; McGilvray vs Avery, 30 Vt. 538; Bank vs Wheeler, 28 Conn. 433, 73 Am. Dec. 683; Child vs Powder Works, 45 N. H. 547; Bank of U. S. vs Merchants' Bank of Baltimore, 7 Gill (Md.) 415. How the plaintiff can gain any advantage by setting forth in its own pleading facts which, if averred in the answer, would constitute a perfect defense to the further prosecution of the suit, is beyond our comprehension.   *   *   * But in

the case at bar the plaintiff does not seek to enlarge its relief, or to alter the character thereof. It merely asks that it be allowed to obviate a perfect defense to its causes of action on the notes, and recover the same money judgment upon an entirely distinct cause of action, not in existence when it brought the suit, but arising subsequently to its commencement. No adjudication, no statute, no principle of law or equity, can be found to sustain its contention in this behalf. In interpreting our statute permitting the filing of supplemental complaints, we must fall back upon the settled practice in chancery before the adoption of the Code. The statute embodies the rule of procedure in equity. It has merely made applicable to actions at law, as well as suits in equity, the rules prevailing in chancery with respect to supplemental pleadings.    *    *    *    In this connection it is well to state the other general rule on the subject of supplemental bills in equity. It is a rule of limitation of power. The plaintiff cannot, by supplemental pleading, bring into the action a distinct cause of action arising since the beginning of the suit.    *    *    *    The ground work of this doctrine is that the plaintiff cannot recover on a cause of action which does not exist when he sues.    *    *    *    Indeed, this practice of changing the cause of action has never been sustained even in a case where the new cause of action was in existence when the suit was commenced. Much less should this be allowed when the cause of action sought to be made the basis of the suit by supplemental complaint arose during the pendency of the case. Milner vs Milner, 2 Edw. Ch. 114; Eastman vs Water Power Co., 17 Minn. 48 (Gil. 31); Prouty vs Railroad Co., 85 N. Y. 272-275; Buchanan vs Comstock, 57 Barb. 583; Wattson vs Thibou, 17 Abb. Prac. (N. Y.) 184; Cohn vs Husson, 67 How. Prac. (N. Y.) 461, 462; Gleason vs Gleason, 54 Cal. 135; Bull vs Rothschild, 52 Hun, 611, 4 N. Y. Supp. 826; Tiffany vs Bowerman, 2 Hun, 643-646. In this last case the court said: 'It seems only necessary to state the facts,

in order to show that the motion for leave to file this supplemental complaint for such a purpose should have been at once denied. A supplemental complaint must be consistent with, and in aid of, the case made by the original complaint.    A new and substantive cause of action cannot be set up, by way of supplemental complaint, as a ground of recovery; more especially a cause of action to which the plaintiff was not entitled when he commenced the action.'    *    *    *    The doctrine as it was enunciated by the vice chancellor in Milner vs Milner, 2 Edw. Ch. 114, has never been questioned, and is undoubtedly sound. The vice chancellor said:    'The question to my mind is whether the complainant, upon her intending to rely upon the new facts, must not file an entirely new bill.    I consider it not a case for amendment or supplemental bill.    The latter is generally filed to continue the original suit, or is in its matter, directly connected with it, and because of the original bill being somewhat defective.    But here there is a new substantive cause of action, upon which a decree can be had without connecting it with the original bill.    The complainant is here wanting to go upon entirely new ground; in fact, to make a new case.    If this is to be done, it must be by a dismissal of the present bill, and filing of a new one.    I must refuse this motion.    *    *    *'

"But it is urged that there is authority for the proposition that a supplemental complaint may embrace such matters as are sought to be incorporated in the complaint in the case at bar, and that such authority should be followed.    To sustain this claim, the case of Jenkins vs Bank, 127 U. S. 484, 8 Sup. Ct. 1196, 32 L. Ed. 189, is cited.    But in our opinion that case is plainly distinguishable from the case now before us.    That action was instituted to foreclose a lien upon certain property pledged as collateral to a debt.    Pending this action, a decree was rendered in another case which so adjudicated the amount due upon the claim to secure which the collateral security had been given as to preclude the relitigation of that question in the

pending suit. The Supreme Court of Illinois and the Supreme Court of the United States both held that it was proper to incorporate in a supplemental bill the fact of the rendition of this decree. But it is obvious that there is no parallel between that case and the action which is before us. The cause of action in that case was not in the indebtedness, but the lien. The object of the action was to foreclose that lien. The plaintiff did not seek to change the object of the action, nor did he attempt to incorporate in his supplemental bill a new cause of action. The lien constituted his sole cause of action before the supplemental bill was filed, and it still remained his sole cause of action after the decree had been rendered, and after the fact that it had been rendered was brought into the case by the supplemental bill. The action was not originally brought upon the indebtedness, but it was founded upon the lien, and this continued to be the cause of action after the supplemental bill had been filed. The lien was not divested by the decree which conclusively established the amount due. 2 Freem. Judgm. §§ 229, 230, and cases cited. In both of these courts the distinction was made which we here outline. Had the action been, not to foreclose a lien, but to recover a money judgment on the indebtedness, it is apparent from the language of both these tribunals that their decisions would have been different. The Illinois Supreme Court said on this point, at pages 470 and 471, 111 Ill. (Jenkins vs Bank): 'We do not consider the supplemental bill as introducing a new cause of action. The indebtedness is the same. The evidence of it at the time of filing the original bill in this case consisted of notes from Walker to the bank. The notes have since, as said, become merged in the Wilshire decree. There has been, then, a change in the evidence of the indebtedness, from notes to a decree upon them. That is all. The collaterals sought to be foreclosed by sale of them were pledged for the payment of the indebtedness. A decree upon the notes, and the running of the statute of limita-

tions against the decree, is not any payment of the indebtedness. The simple effect is that the statute is a bar to a suit upon the decree. The collaterals may be held until the indebtedness is paid according to the terms of the pledge. We do not consider that there has been any new suit brought upon the decree, but that there is, under the supplemental bill, the assertion of the right to claim the benefit of the Wilshire decree as res adjudicata, and that the statute of limitations set up is not a bar to that right.' And in the federal Supreme Court the same distinction is stated in the following language: 'In support of this proposition, it is argued, on behalf of the plaintiff in error, that the supplemental bill set out, and sought a recovery upon, a cause of action distinct from that stated in the original bill. The original bill prayed for a decree against Walker upon his notes held by the bank, and for the satisfaction thereof a sale of the property held as security therefor. During the pendency of that bill, precisely the same matters were put in issue in the Wilshire suit between Walker and the bank, and in that suit a decree was rendered finding the amount due. That decree in the Wilshire suit stands unreversed, and operates as an estoppel by way of res adjudicata between the parties. By way of proof or in pleading, it would be good as a bar in any subsequent suit between the same parties upon the same issues. Having been rendered after the institution of the present suit, it was competent for the complainant to bring it forward, by a supplemental bill, as conclusive evidence of the amount due, for which it was entitled to take a decree, and as a complete answer to the defense set up by the plaintiff in error, as the assignee of the bankrupt, to the relief prayed for in the original bill, and to the relief sought by the cross-bill. It was strictly new matter arising after the filing of the bill, properly set up by way of supplemental bill, in support of the relief originally prayed for. It can in no sense be considered as a new cause of action. It was not a bill to enforce the decree, nor was the

complainant obliged to rely upon it as the sole ground of recovery, on the ground that the original cause of action had become merged in it. If the notes were merged in the decree, it was ·simply a change in the nature of the evidence to support the complainant's title to relief. The indebtedness remained the same, and the equity of the complainant to a foreclosure and sale of the securities remained unchanged.' In fact, the courts in that case were but applying the familiar rule that the holder of collateral security may, in the absence of a statute to the contrary, recover a personal judgment upon his claim, and thereafter foreclose his lien notwithstanding such judgment. See 1 Freem. Judgm. §§ 229, 230; Bank vs Brown, 112 Ind. 474, 481, 482, 14 N. E. 358. The cause of action in such a foreclosure suit being the lien, the recovery of a judgment on the debt, before or after the commencement of the foreclosure action, does not create a new cause of action; does not extinguish the old. The original lien continues in existence, securing the new evidence of the debt the same as it did the old. By the recovery of a judgment, the cause of action is not wiped out. The only effect is to conclusively establish the amount which the lien secures. It is a significant fact that in New York the Legislature has, in express terms, incorporated into the statute regulating the filing of a supplemental complaint a provision that the plaintiff may in this way bring into the case 'the judgment or decree of a competent court, rendered after the commencement of the action determining the matters in controversy or a part thereof.' Code Civ. Proc. N. Y. § 544. It is evident that in New York the law was considered to be settled the other way, in the absence of an explicit statute on the point. Our Code merely permits the plaintiff to set up in his supplemental bill 'facts material to the case.' Rev. Codes, § 5301. What in this action is 'the case' of the plaintiff as his suit was originally brought? The answer is obvious. It is the cause of action set up in his complaint. That con-

stitutes his case.   Another and entirely distinct cause of action does not constitute his case, as it appears in his original pleading. As we have already seen, the decisions are unanimous to the effect that, under just such a statute as ours, the plaintiff cannot, by supplemental complaint, introduce a new and distinct cause of action.

"The argument of hardship does not appeal to us with any force.   It is true that in this case, and it will likewise be true in many other cases, a refusal to allow the subsequent recovery of the judgment to be set up in a supplemental complaint will result in the loss of priority of lien upon property secured by an attachment in the action, because the plaintiff will be compelled to dismiss his action upon the claim, and bring a new suit upon the judgment itself.   This same argument was advanced in Bank vs Wheeler, 28 Conn. 433, 73 Am. Dec. 683, against the proposition that the effect of the recovery of a judgment in one state was to extinguish the cause of action in every other state.   It will be observed that the precise question here presented was there involved, for if the judgment extinguishes the original cause of action, and creates a new cause of action, there is no logical escape from the conclusion that the suit cannot be kept alive by supplemental complaint. On this point of hardship the court says:   'The plaintiffs urge the inconvenience arising from holding the judgment in New York to be a defense in the present suit, in consequence of the loss of the security obtained by attachment in the latter.   We are not, however, at liberty to impair the effect which the Constitution and laws of the United States give to judgments rendered in the several states, although it may be attended with inconvenience, or even apparently unjust consequences. The remedy is elsewhere.   When suits are pending in different states upon the same cause of action, the plaintiff must elect in which he will proceed to final judgment.'   And in two other cases, in which it was held that the recovery of a judgment

upon the claim sued for was fatal to the further prosecution of the action, it appears that the attachments had been issued and levied, and that, of course, the liens secured thereby would be lost. Bank of U. S. vs Merchants' Bank of Baltimore, 7 Gill (Md.) 415; Child vs Powder Works, 45 N. H. 547, see pages 549, 550.    *    *    *    It frequently happens that the judgment rendered is not a personal judgment in more than one state; jurisdiction being acquired in other states solely over property by attachment or garnishment. A judgment purely in rem would not merge the cause of action on the original claim, and therefore would not constitute a bar to an action thereon in another jurisdiction. Whittier vs Wendell, 7 N. H. 257; Fitzsimmons vs Marks, 66 Barb. (N. Y.) 333; Rangely vs Webster, 11 N. H. 299; 1 Freem. Judgm. §§ 218, 219. In many cases there will therefore be no hardship to the creditor."

In 1 Enc. of Pl. & Pr. p. 550, it is said: "Granting leave to amend by changing the cause of action or defense is not erroneous unless substantial rights of the adverse party are affected thereby. Stevens vs Matthewson, 45 Kan. 594, 26 Pac. 38, where all the costs were imposed on the defendant, and a continuance granted, the court holding, however, that this conclusion is based upon the language of the statute of jeofails. No. 140, Code Civ. Proc." Section 140 of the Kansas Code of Civil Procedure is as follows: "The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." But we have no statute of such character in this jurisdiction.

In Allen vs City of Davenport, 115 Iowa, 20, 87 N. W. 743, the court said: "By section 3641 of the Code either party is allowed 'to make a supplemental petition, answer or reply alleging facts material to the case which have happened or have come to his knowledge, since the filing of the former

pleading.' But this does not authorize the presentation of an entirely new cause of action. The statute simply embodies a rule long observed in chancery practice, making it applicable to procedure at law as well as in equity. Such has been the uniform holding in other states having a like statute. The following cases either expressly or impliedly hold that an entirely new cause of action may not thus be brought into the litigation: Birmingham vs Lesan, 77 Me. 494, 1 Atl. 151; Prouty vs Railway Co., 85 N. Y. 275; Jacob vs Lorenz, 98 Cal. 332, 33 Pac. 119; Bank vs Shoemaker, 117 Pa. 94, 11 Atl. 304, 2 Am. St. Rep. 649; Candler vs Pettit, 1 Paige (N. Y.) 168, 19 Am. Dec. 399; Jaques vs Hall, 3 Gray (Mass.) 194; Edgar vs Clevenger, 3 N. J. Eq. 258; Swedish-Am. Nat. Bank vs Dickinson Co., 6 N. D. 222, 69 N. W. 455, 49 L. R. A. 285. In the last case the decisions are exhaustively reviewed and the conclusion reached 'that the plaintiff cannot, by supplemental pleading, bring into the action a distinct cause of action arising since the beginning of the suit.' "

Section 5084, Mansf. Dig., under which the amendment in the case at bar was allowed, is as follows: "The plaintiff and defendant, respectively, may be allowed, on motion, to make a supplemental complaint, answer or reply, alleging facts material to the case occurring after the filing of the former complaint, answer or reply"—and is substantially the same as the statute construed in the foregoing authorities.

In Schwab vs Schwab, 93 Md. 382, 49 Atl. 331, 52 L. R. A. 414, the court said: "It is well settled, however, that the supplemental bill being merely an addition to the original bill, and the two constituting but one record, the latter must be consistent with the former, and its allegations must be, germane thereto, and must be supplemental in their nature and not independent or subsequent, and the new matters must not change the rights or interest of the parties. * * * Where the facts occurring subsequent to the filing of the original

bill are, when considered separately from those set up in the bill, sufficient in themselves to constitute a cause of action, they must be made the subject of a separate original bill, and cannot properly be embraced in a supplemental one. Milner vs Milner, 2 Edw. Ch. 114; Bannon vs Comegys, 69 Md. 411, 16 Atl. 129; Robertson vs Robertson, 9 Daly (N. Y.) 44; Prouty vs Railroad Co., 85 N. Y. 275; Keyser vs Renner, 87 Va. 249, 12 S. E. 406; Hill vs Hill, 10 Ala. 527. In Straughan vs Hallwood, 30 W. Va. 274, 4 S. E. 394, 8 Am. St. Rep. 29, the court says that, to permit a new cause of action, arising after the institution of the original suit to be prosecuted by a supplemental bill, would be to violate the obvious principle that in every case the cause of action must exist at the time the suit is brought."

In Meyer vs Berlandi, 39 Minn. 438, 40 N. W. 513, 1 L. R. A. 777, 12 Am. St. Rep. 663, the court said: "If an original complaint is wholly defective, and there are no grounds for proceeding upon it, it cannot be sustained by filing a supplemental one founded on matters which have subsequently taken place. A supplemental complaint can only enlarge or change the kind of relief to which a party may be entitled, where a cause of action exists at the time of the commencement of the action. Lowry vs Harris, 12 Minn. 255 (Gil. 166)."

The second proposition discusses the seventh, eighth, and eleventh assignments of error, and alleges error in admitting in evidence the dissolving bond signed by the National Surety Company as surety, and rendering judgment against said National Surety Company, and overruling motion in arrest of judgment filed by said company. The action of the court in directing a verdict for plaintiff upon the amended complaint, and then in sustaining the attachment in this case, presents a novel condition for the consideration of this court. The affidavit for attachment is as follows: "Affidavit for Attachment. The plaintiff, Saline County Bank, states that the claim in this action

against the defendants P. Cassidy and J. McFadden is for money due upon overdrafts from the 28th day of November, 1899, to May 1, 1900; that it is a just claim; that it ought, as it believes, to recover thereon two thousand dollars; and that said P. Cassidy and J. McFadden are nonresidents of the Indian Territory. Affiant is informed and believes that the State National Bank of South McAlester, Ind. Ter., is indebted to the defendant in the sum of twelve hundred dollars, and affiant prays that a writ of garnishment be issued against said State National Bank, commanding it to answer what moneys, goods, chattels, or effects it has in its hands or possession belonging to the defendants or either of them"—and the same was never amended. It thus appears that the attachment was procured upon an open account; that subsequently that open account was merged in a judgment rendered in an Oklahoma court, and then by amendment that judgment was made a part of the amended complaint, and a judgment rendered upon that judgment by direction of the court. The court then sustained the attachment sued out upon an open account. Thus we have in this action a judgment upon a judgment, and attachment sustained upon an open account, which has been merged in the judgment which is the basis of the action, and a judgment upon the dissolving bond against the surety company. The question thus presents itself: Was the obligation of the surety company changed by the introduction of this new cause of action by way of amendment? As we understand the law, the surety upon a bond to dissolve an attachment takes his obligation with reference to the cause as it then stands. The action then was upon an open account, and a denial of any liability by the defendant, and a denial of the partnership. These defenses were eliminated by the amendment setting up the Oklahoma judgment as the cause of action. In Waples on Attachment and Garnishment, §§ 774, 775, it is said: Section 774: "The surety upon a bond given by the defendant to dissolve an attachment takes

his obligation with reference to the cause as it then stands; and should the plaintiff afterwards so change his pleadings as to make virtually a new action, how can it be said that the surety would have obligated himself under such new order of things? He may have been satisfied that the plaintiff could not recover in the action, and may therefore have been willing to give the defendant present relief by signing as his bondsman, though he would not have signed had the suit been well grounded." Section 775: "But, notwithstanding the bonding, the plaintiff may amend without relieving the defendant's surety from any obligation, if he does not change the character of the action by introducing new counts or new grounds. It is not just to the surety that he should be put in a worse condition than he was in when he signed, by any amendment that would strengthen the old grounds or make the plaintiff's position any better, and the surety's consequently worse. But amendment is allowed in practice, and even if new counts and new grounds are introduced the surety will be liable after final judgment, if the judgment is not based on the new grounds or amended counts." In Shinn on Attachment & Garnishment, § 306, p. 596, it is said: "On the principle of suretyship, that anything which works a change of the liability of the principal discharges the surety if effected without his consent, the amendment of an attachment writ, after its entry in court, by discontinuing it as to one defendant and summoning another, if done without notice to the surety on a bond to dissolve the attachment, will release him from liability on such bond. Likewise the amendment of a declaration so as to increase the liability of the principal in the bond will discharge the surety." In 2 Brandt on Suretyship & Guaranty (2d Ed.) pp. 682, 683, it is said: "The sureties on a bond given for the release of attached property are not liable thereon if the attachment is subsequently dissolved. And where there is no authority in law for issuing an attachment, a bond with sureties given to dissolve the same, con-

ditioned to pay the plaintiff the judgment which he may recover, is void, and the sureties thereon are under no liability. Sureties on a bond given for the dissolution of an attachment are held not bound for an increase of plaintiff's claim made by amendment after the bonding. They are not discharged, however, by the amendment of a count so as to state it more accurately. And if the amount sued for in a count is not affected by the amendment, the sureties are held not discharged. The sureties on a bond given to dissolve an attachment who have paid the execution for costs only, issued upon the judgment against their principal, held to operate as a payment pro tanto of the judgment, and not to release them from liability for the remainder of the judgment." We are of the opinion that the motion of the National Surety Company to arrest the judgment, as to it, should have been sustained.

The third proposition embraces the ninth assignment of error. The revivor is regulated by section 5239, Mansf. Dig., which is as follows: "If the order is made by the consent of the parties, the action shall forthwith stand revived; and, if not made by consent, the order shall be served in the same manner as a summons upon the party adverse to the one making the motion. And at the first term, commencing not less than ten days after such service, the party on whom it is made may show cause against the revivor; and, if sufficient cause is not then shown, the cause shall stand revived." It thus appears that when not revived by consent it shall be served in the same manner as a summons is served. When a summons is served, it is provided, in section 5046, Mansf. Dig., as follows: "The defense to an action at law shall be filed on or before the third day of the term: First. When the summons has been served ten days before the commencement of the term in the county in which the action is brought, or in an adjoining county." We have not been furnished any authority that holds that "at the first term, commencing not less than ten days after such

service, the party on whom it is made may show cause against the revivor; and, if sufficient cause is not then shown, the cause shall stand revived," shall be entitled to the entire term to show cause. It seems reasonable that he should show cause within the same time at the "first term" that defendant is required to file defense. We are of the opinion that the ninth assignment is not well taken.

In discussing the assignments of error filed by plaintiff in error, the defendant in error says: "Counsel for the plaintiff in error have urged 11 assignments of error against the judgment rendered by the court below. These 11 assignments are subdivided in the argument into three propositions, and in counsel's brief have been presented under three subdivisions." Then says there can be no controversy about this rule that the judgment merges the original cause of action stated in the complaint. Then says: "The only question of importance involved in the case is found in the second proposition presented by counsel." And claims: "It was not an attempt to substitute one action for another, or one party for another, but an effort to set forth certain matters that had arisen since the commencement of the action. Section 5084 of the Mansfield's Digest of the Statutes of Arkansas (section 3289 of the Indian Territory Annotated Statutes of 1899) provide: 'The plaintiff and defendant respectively may be allowed on motion to make a supplemental complaint, answer or reply, alleging facts material to the case, occurring after the filing of the former complaint, answer or reply.'" Then quotes section 5080, Mansf. Dig. as follows: "Section 5080 of the Mansfield's Digest of Statutes, which provides for amendments, says that: 'The court may at any time in furtherance of justice, on such terms as may be proper, amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party or a mistake in any other respect or by inserting other allegations material to the cause.' And following

this provision with the statement: 'Or when the amendment does not change substantially the claim or defense by conforming the pleading or proceeding to the facts proven.' This statute permits an amendment in any respect at any time in furtherance of justice, but provides that: 'When such amendment is made to conform the pleading or proceeding to the facts proven, such amendment must not substantially change the claim or defense.' " Defendant in error then proceeds to argue that an amendment that substantially changes the claim or defense only applies when it is made to conform the pleading or proceeding to the facts proven. "If prior to the trial an amendment is proposed, as was done in this action, the defendant will be permitted to further plead, and take a continuance, and the court has power to impose such terms on the party amending as the court may deem just. * * * At the trial, if an amendment be permitted to conform to the proof, the defendant is given no opportunity to meet the new issue framed, and such amendment is therefore by the statute prohibited if it substantially changes the claim or defense." Defendant in error, however, does not cite any statute in force in this jurisdiction that sustains his argument. Defendant in error says there are two rules regarding amendments: "The first rule is that a judgment, subsequently rendered in another form upon the cause of action may be brought in by amendment in the second action on the same cause of action, and that such judgment does not abate the second action if brought in properly on amendment. The second rule is that when an action is brought against nonresident defendants, and a writ of garnishment or attachment is issued and levied upon property, and a judgment is rendered in a foreign jurisdiction upon the same cause of action, the petition may be amended in the non-resident action so as to bring in the judgment and enforce the lien procured by the attachment or garnishment." And says the court in the case at bar followed the second rule.

But are the facts in the case at bar as stated by defendant in error? The action both in Oklahoma and Indian Territory was upon the account sued upon, and the attachment in both cases was ancillary to the main action, and the record discloses that personal service had been had in the Oklahoma case on both Cassidy and McFadden, the defendants, and in the case at bar it had been had upon McFadden, and the issue was the same in both cases. The cause of action in both suits was upon the account, and the attempt of defendant in error to claim that the action in the case at bar was to foreclose a lien is not borne out by the record. There is no question that, where a suit is pending to foreclose a lien, the foreclosure of the lien is the cause of action, and, if the amount secured by the lien has been fixed in an action where the cause of action was upon the debt, it will be admitted as proof of the amount of the debt, and is not a new cause of action. This was decided in the Illinois and United States Supreme Court cases cited by defendant in error, but they do not sustain the contention of defendant in error that, when suits in both cases were upon the same cause of action, the judgment in one case could be brought in by amendment in the other case, because the judgment in the one case merges the cause of action in the other, and, if it is desired to sue upon the judgment, a new suit must be brought, because it is a new and independent cause of action. Swedish-American National Bank vs Dickinson, 6 N. D. 222, 69 N. W. 455, 49 L. R. A. 285. In this case it is presented and discussed at much length. In the Louisiana case cited, we have been unable to examine the statute upon the subject of amendments of pleadings, which in many respects are controlling, and therefore are not in a condition to intelligently discuss that case. In Teberg vs Swenson, 32 Kan. 224, 4 Pac. 83, the judgment pleaded was not between the parties to the action, but was a judgment obtained by one party against the defendant and assigned to the plaintiff. The case was not discussed in the

light of the authorities, as not a single authority was cited.    In Stevens vs Matthewson, 45 Kan. 594, 26 Pac. 38, it is said: "Granting leave to amend by changing the cause of action or defense is not erroneous unless substantial rights of the adverse party are affected thereby"—holding, however, that this conclusion is based upon the following statute: "The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." Jenkins vs Bank, 127 U. S. 484, 8 Sup. Ct. 1196, 32 L. Ed. 189, and the same case in 111 Ill. 470, as heretofore stated, are so fully discussed, and the distinction between the case at bar and those cases so clearly stated in Swedish-American Nat. Bank vs Dickinson, 6 N. D. 222, 69 N. W. 461, 49 L. R. A. 285, that we deem is unnecessary to make further reference to them.

Defendant in error then says: "Upon all principles of reasoning such amendment should be allowed.    There was no change in the cause of action by such amendment." In reply to that suggestion, we would cite 6 N. D. 222, 69 N. W. 461, 49 L. R. A. 285, on the motion for rehearing in the case of Swedish-American Nat. Bank vs Dickinson, as follows: "If one who has borrowed money fails to pay it, a cause of action against him for money loaned exists.    If his creditor thereafter takes the debtor's note in full payment, the old cause of action is extinguished, and a new one is created.    The fact that there was an original debt is important only for the purpose of showing a consideration for the note.    But an action upon such a note, under such circumstances, cannot be regarded as an action for money loaned.    The original cause of action in the case supposed has been wiped out.    If, in turn, a bond should be executed in payment of the note, the cause of action on the note would, in turn, be destroyed.    If judgment should finally be recovered upon such bond, the cause of action upon the bond would like-

wise be extinguished. In the case supposed, there would exist, in succession, four distinct causes of action, all founded upon the same debt, which had at no time been paid, despite all the various changes which had taken place in the form of the evidences of such indebtedness. Would counsel for plaintiff seriously contend that in such a case there existed at all times only one cause of action, the original cause of action for money loaned? Pushed to its logical consequences, the doctrine contended for would make it necessary for a court to apply to an action upon the judgment here involved the statute of limitations applicable to the original cause of action, the six years' statute of limitation. All must agree that no action upon the notes can be maintained after judgment. This is conceded. All will assent to the proposition that the action must be maintained upon the judgment. And yet if it is the same cause of action as that upon the notes, or for the original debt, the six .years' statute of limitation governs. This will be true in all cases. The consequence will be that in every instance the statute of limitations applicable to the cause of action upon which the judgment is founded will govern in actions upon such judgment. Would counsel for plaintiff concede that their cause of action upon this judgment would be barred in six years? Here is a decisive test."

Defendant in error cites 1 Enc. Pl. & Pr., p. 474, as to the test to be applied in determining whether an amendment can be filed, as follows: "The usual tests are whether the original and amended bills found the right of complainant to relief on different and inconsistent titles, or upon entirely inconsistent claims, arising out of a different state of facts." But he failed to cite the whole paragraph, which is as follows: "Whether, on the exercise of the right, an amendment falls within the limitations is sometimes a subtle and difficult matter requiring nice discrimination. The usual tests are whether the original and amended bills found the right of complainant to relief on different

and inconsistent titles, or upon entirely inconsistent claims arising out of differing states of facts, or whether the same defenses are applicable, or whether the kind or character of relief, not the degree or extent, proper to one state of facts, is inappropriate to the other; in other words, whether the matters of the original and amended bills could have been properly stated in the alternative in the original bill."

We do not think the same defenses were applicable, neither do we think that the matters in the original and amended bills could have been properly stated in the alternative in the original bill. We are of the opinion that the judgment in this case should be reversed.

Reversed and remanded.

GILL, C. J., and LAWRENCE, J., concur.