[Decided at PENDLETON July 31, 1897.]

# TALBOT *v.* GARRETSON.

(49 Pac. 978.)

1. AMENDMENT OF PLEADINGS—NEW CAUSE OF ACTION.—It is within the power of the court, under section 101, Hill's Ann. Laws, to allow a party to file before trial an amended pleading containing a new cause of action or defense material to the subject matter of the controversy then before the court; although the original cause cannot be abandoned, and an entirely different one substituted: *Foste* v. *Standard Insurance Company*, 26 Or. 449, distinguished.

2. RESTORING MORTGAGE LIEN—EQUITY.—Before a court of equity can restore the lien of a mortgage canceled by mistake it must appear that at the time of such release the mortgagee did not know of the intervening lien over which he desires to obtain priority.

3. CONSTITUTIONAL LAW.—ENTRY OF DEFAULT JUDGMENT BY CLERK.—Section 249, Hill's Ann. Laws, which authorizes the clerk, on application of plaintiff, where no answer is filed, to enter the default of defendant, and enter judgment against him for the amount specified in the summons, is not unconstitutional as attempting to confer judicial power on the clerk: *Crawford* v. *Beard*, 12 Or. 447, approved and followed.

From Umatilla: STEPHEN A. LOWELL, Judge.

This case was commenced on August 27, 1896, by H. C. Talbot to enjoin the sale of certain land belonging to the plaintiff under an execution issued on a judgment against his grantor, J. L. Craft, and in favor of defendants Garretson, Woodruff, Pratt & Company, for the sum of $4,000, rendered on April 1, 1896, on the ground that the judgment was entered without jurisdiction, and is absolutely void. The original complaint alleged title in plaintiff, the issuance of the execution on defendants' judgment, the levy thereof and the advertisement of the land for sale, the invalidity of the judgment, and prays for an injunction. After the issues had been made up, but before the

trial, the plaintiff, by leave of the court, filed an amended complaint which contained substantially the same averments as the original, and, in addition, alleged that at the time the plaintiff purchased the land in question, his father was the owner of two certain mortgages thereon, which were prior in time and superior in right to the lien of defendants' judgment, and which were duly assigned and transferred to him, and subsequently cancelled and released; that such releases were made and executed by mistake, and were not intended to release or cancel the lien of the mortgages upon the premises, but for the sole and only purpose of conveying and giving to the plaintiff the right, interest, and title of his father therein. The complaint, as amended, prayed for a decree enjoining the threatened sale under execution, as in the original complaint, but, if that could not be done, that the mortgages be restored and the cancellation thereof annulled. The defendants moved to strike the amended complaint from the files on the ground that it set up a new and distinct cause of suit from that alleged in the original complaint, and, this motion being overruled, they moved to strike out all the allegations thereof in reference to the mortgages and their cancellation, on the ground that the facts thus stated were immaterial, and constituted no part of a cause of suit against the defendants. This motion was likewise overruled, and, upon issues being subsequently joined by answer and reply, the case was tried, and a decree rendered in favor of plaintiff, restoring the mortgages as liens upon the premises in question su-

perior in right to the lien of the defendants' judgment, and from this decree defendants appeal.

REVERSED.

For appellants there was an oral argument by *Mr. John J. Balleray*, with a brief over the name of *Balleray & Butler*, to this effect:

The amended complaint entirely changed the issues in the case and substituted a different cause of suit, and one that was not even squinted at in the original. The court had no right, as a matter of law, to allow such an amendment, and the motion to strike out should have been allowed: *Sears* v. *Missouri Mortgage Loan Company*, 56 Mo. App. 122; *Heman* v. *Glann* (Mo.), 31 S. W. 589; *Union Pacific Railway Company* v. *Wyler*, 158 U. S. 285 (15 Sup. Ct. 877); *Foste* v. *Standard Life Insurance Company*, 26 Or. 449 (38 Pac. 617); *Ricker* v. *Curtis*, 30 N. Y. Sup. 940; *Zboynski* v. *Brooklyn City Railroad Company*, 30 N. Y. Sup. 540; *Rossel* v. *Rosenberg*, 30 N. Y. Sup. 812; Pomeroy on Remedies and Remedial Rights, §§ 435, 595, 596; *Blalock* v. *Equitable Life Assurance Society*, 73 Fed. 655; *Flanders* v. *Cobb*, 88 Maine, 488 (34 Atl. 277); *Smith* v. *Smith*, 38 N. Y. Sup. 551; *Shafreman* v. *Jacobs*, 36 N. Y. Sup. 428; *Lawry* v. *Lawry*, 34 Atl. 273; *Gould* v. *Gleason*, 10 Wash. 477; *Waggy.* v. *Scott*, 29 Or. 386 (45 Pac. 774).

Another matter is that there is no allegation and no evidence to show that D. Talbot did not know all about this judgment when he satisfied the mortgages. All the cases which hold that a cancelled mortgage may be restored under certain circumstances and

made prior to subsequent liens are cases where the cancellation was made without knowledge or notice of such existing liens: *Hanlon* v. *Daugherty*, 109 Ind. 37 (9 N. E. 782); *Barnes* v. *Mott*, 64 N. Y. 398 (21 Am. Rep. 625); *Watson* v. *Dundee Mortgage Company*, 12 Or. 474 (8 Pac. 548); *Pearce* v. *Buell*, 22 Or. 33; *Kern* v. *Hotaling*, 27 Or. 205 (50 Am. St. Rep. 710).

For respondent there was an oral argument by *Mr. A. D. Stillman*, with a brief over the names of *J. W. Brooks*, and *Stillman & Pierce*, to this effect:

Amendments are allowed in furtherance of justice, and are allowed or refused in the discretion of the trial court; and the supreme court will not interfere unless in a plain case of abuse of discretion: *Hexter* v. *Schneider*, 14 Or. 184; *Hodges* v. *Tennessee Fire Insurance Company*, 8 N. Y. 416; *Smith* v. *Billett*, 15 Cal. 26; *Bowles* v. *Doble*, 11 Or. 474, p. 481; *Pierson* v. *McCahill*, 22 Cal. 128; *Morrison* v. *Lovejoy*, 6 Minn. 224; *State* v. *Mayor*, 18 Iowa, 389; *Branson* v. *Oregon Railway Company*, 11 Or. 160; *Swift* v. *Mulkey*, 14 Or. 59, p. 63.

The amendment in this case was plainly in furtherance of justice, and fairly allowed by the circuit judge in the exercise of a sound judicial discretion. It was such an amendment as is contemplated by the statute, and in no way changed the cause of suit, or misled or prejudiced the defendants: *Henderson* v. *Morris*, 5 Or. 25; *Pierson* v. *McCahill*, 22 Cal. 128, p. 132; *Stringer* v. *Davis*, 30 Cal. 318; *Smith* v. *Yreka Water Company*, 14 Cal. 201.

The rule is well settled that a mortgage upon real property for the purchase price (as this was) has pri-

ority over prior judgment liens, and if the deed and mortgage are delivered at the same time, it does not matter if they were in fact, signed on different days: *Kern* v. *Hotaling,* 27 Or. 205 (50 Am. St. Rep. 710); *Dusenberry* v. *Hurlburt,* 59 N. Y. 541; *Lafayette* v. *Erb,* 8 Atl. 62; *Roane* v. *Baker,* 11 N. E. 246; *Maybury* v. *Brien,* 15 Pet. 21; Jones on Mortgages, §§ 464, 366.

The plaintiff held the fee, and the assignment to him of the mortgages did not operate as a merger. The rule is well settled that where the fee is acquired by the mortgagee, merger will not take place where it is to his interest that it should not do so: Jones on Mortgages, § 869; *Watson* v. *Dundee Mortgage Company,* 12 Or. 476; *Woodward* v. *Davis,* 53 Iowa, 696; Pomeroy's Equity Jurisprudence, § 791, and notes; *Westheimer* v. *Thompson* (Idaho), 32 Pac. 205.

The plaintiff being the owner of the mortgage, his father (the original mortgagee), at plaintiff's request released both mortgages. This was done in ignorance of the existence of defendant's judgment, and certainly not with the intention of creating in the defendant a superior right in the premises.

The rule is firmly fixed that a mortgage discharged of record will be reinstated when it has been released of record by one who bought the premises subject to the mortgage, and in ignorance of a judgment lien inferior in right to the mortgage, and having caused it to be satisfied under circumstances authorizing an inference of a mistake of fact, equity will presume such mistake, and give him relief by reinstating the mortgage. If, under such circumstances, he has paid the mortgage, equity will give him the benefit of the

equitable right of subrogation: *Pearce* v. *Buell*, 22 Or.
29; *Kern* v. *Hotaking*, 27 Or. 205 (50 Am. St. Rep. 710);
Jones on Mortgages, § 876, p. 732; *Barnes* v. *Mott*, 64
N. Y. 397; *Young* v. *Morgan*, 89 Ill. 199; *Stimson* v.
*Pease*, 53 Iowa, 572; *Bruce* v. *Nelson*, 35 Iowa, 157;
*Geib* v. *Reynolds*, 35 Minn. 331 (28 N. W. 929); *French*
v. *De Bow*, 38 Mich. 709; *Cobb* v. *Dyer*, 69 Me. 494;
*Hutchinson* v. *Swartsweller*, 31 N. J. Eq. 205; *West's*
*Appeal*, 88 Pa. St. 341; Jones on Mortgages, §§ 966, 971.

MR. JUSTICE BEAN, after making the foregoing
statement, delivered the opinion of the court.

1.   The defendants contend, at the outset, that the
court had no right, as a matter of law, to allow the
amended complaint to be filed, because it purposed to
add a new and distinct cause of suit not embraced in
the original complaint. The statute (Hill's Ann. Laws,
§ 101) provides that: "The court may, at any time be-
fore trial, in the furtherance of justice, and upon such
terms as may be proper, allow any pleading or pro-
ceeding to be amended by adding the name of a party,
or other allegation material to the cause, and, in like
manner and for like reasons, it may, at any time be-
fore the cause is submitted, allow such pleading or
proceeding to be amended by striking out the name of
any party or by correcting a mistake in the name of
any party or a mistake in any other respect or when
the amendment does not substantially change the
cause of action or defense by conforming the pleading
or proceeding to the facts proved." The construction
of this section has been much discussed, and, while it
must be regarded as settled that a new cause of action

cannot be inserted by way of amendment on the trial (*Foste* v. *Standard Insurance Company*, 26 Or. 449, 38 Pac. 617), the question as to whether it may be done before trial has never been decided here, and the decisions elsewhere are conflicting. By one class of cases—of which *Board of Supervisors* v. *Decker*, 34 Wis. 378, is an example—it is held that a party cannot, under the form of an amendment before trial, change the scope of his action, or insert a new cause of action. But it is believed that this view is not in harmony with the great weight of authority, or the reason and spirit of the statute. In New York, under a statute practically the same as ours, the courts, after apparent vacillation, finally established the rule that an amendment before trial, setting up a new cause of action or suit, is permissible if in furtherance of justice, but that the power to grant amendments upon the trial is restricted to such amendments as do not change substantially the cause of action or defense: 1 Rumsey's Practice, 284; *Brown* v. *Leigh*, 49 N. Y. 78; *Hatch* v. *Central Bank*, 78 N. Y. 487; *Freeman* v. *Grant*, 132 N. Y. 22 (30 N. E. 247).

In *Brown* v. *Leigh*, 49 N. Y. 78, the original complaint was to compel the determination of conflicting claims to real property, but under a statute providing that any pleading may be once amended by the party of course without prejudice to proceedings already had, the plaintiff served an amended complaint which set forth a cause of action in ejectment. This was stricken out on motion, upon the ground that it embraced a new and different cause of action from that set forth in the original complaint. From this order

an appeal was taken, and Mr. Justice Grover, after referring to the fact that some of the courts of the state had held that the statute only gave the right to amend and perfect what was previously set out in an imperfect manner, and that others had held that a new cause of action or defense might be set up, says: "I think the construction adopted in the former cases too strict, and subversive of the true meaning of the section in this respect. That gives a party power to amend any pleading once without imposing any restriction upon it. The term 'pleading' includes all the pleadings of both parties. The 'complaint' is the statement of the plaintiff's cause or causes of action. It is this statement or complaint that may be amended and perfected by the party so as to enable him to present his entire case upon trial. It is not confined to an amendment of such matter as has been defectively stated in the original complaint. The same remarks apply to the answer. This is a statement of the defense and of any counterclaim or claims. It is this statement that may be amended by the party so as to enable him to avail himself of all his defenses upon trial. It follows that new causes of action may be included in the complaint, and those in the original left out, and new defenses or counterclaims embraced in the answer. That this was the intention of the legislature clearly appears from the last clause of section 173, Code Procedure [which is similar to our section 101], by which the power of the court to grant amendments upon the trial by conforming the pleading to the facts proved is restricted to such amendments as do not change substantially the claim or defense. The

insertion of the restriction shows that the legislature, in its absence, understood that such change might be made under the power conferred. There is no such restriction in section 172, nor upon the general power conferred upon the court to allow amendments conferred by section 173. Were the power to amend upon trial unrestricted, parties might be compelled to litigate matters of which they had no notice, and for which they were unprepared, and injustice thereby done; but there is no such danger where the amendment is made before trial, so that the adverse party may come fully prepared to meet." It is quite true, this decision was made under a section of the New York statute in substance the same as section 99 of our code, but it was no more liberal as to the character of the amendment which may be made than the first clause of section 101, now under consideration. The only difference is that in the one instance the amendment may be made as a matter of course, while in the other it can only be done by leave of the court, and in furtherance of justice; and therefore the reasoning of Judge GROVER in the case referred to is just as applicable to the case in hand, and to the proper construction of the first clause of section 101, as it is to the construction of the section of the New York statute which he was then considering. The section quoted plainly provides for two classes of amendments, one made before trial and the other after the trial has begun, and before the final submission of the case. In the former, no limitation is placed upon the power of the court to allow an amendment except that it must be "in furtherance of justice," and, if a

new allegation is added, it must be one "material to
the cause"; while in the latter the power is restricted
to such amendments as do not substantially change
the cause of action or defense.

It follows, we think, that it is within the power of
the trial court to allow, before trial, an amended com-
plaint to be filed containing a new cause of action or
suit material to the subject matter of the controversy
then before the court.  A plaintiff cannot, of course,
abandon his original cause of action or suit, and sub-
stitute an entirely new and different one, because in
such case the new pleading would not be an amend-
ment, but a substitution for the original.  But so long
as the amendment is germane to the subject matter of
the controversy, we can see no objection to the court,
in the exercise of a sound discretion, allowing the
pleadings to be amended in furtherance of justice
by inserting new and additional allegations material
to such controversy, although they may, in effect, con-
stitute a new cause of action or defense.  That this is
the intention of the statute is, it seems to us, made
manifest from the latter clause of the section under
consideration, which specially restricts the amend-
ments made on the trial to such as do not substan-
tially change the cause of action or defense.  This
construction is in harmony with the rule governing
the allowance of amendments, which has in view the
determination of the actual controversy with as little
expense and delay as possible.  "While the parties
are in court," says Chief Justice STRAHAN, "they
ought to be permitted to shape their pleadings in
such form as they may be advised, so as to present

the real questions at issue that the same may be determined with as little delay and expense as possible. Nothing is ever gained by turning a party out of court, or compelling him to take a nonsuit, on account of some defect in his pleadings not discovered, perhaps, until during the progress of the case, when an amendment could supply the defect, and the action or suit be brought to an early determination": *Baldock* v. *Atwood*, 21 Or. 73 (26 Pac. 1058). As illustrating the power of the court, under a statute similar to ours, to allow the pleadings to be amended, the case of *Hatch* v. *Central Bank*, 78 N. Y. 487, is instructive. In that case the original complaint alleged, in substance, that plaintiff purchased of defendant what purported to be four United States treasury notes for $1,000, which were counterfeited. Upon issue joined the plaintiff had judgment for the amount paid for the counterfeit notes, with interest; but, after this judgment had been paid and satisfied, the court granted a motion that it be opened, and the satisfaction thereof cancelled, and that plaintiff be allowed to serve an amended complaint, adding a count setting forth the purchase of four other similar counterfeited notes, which it was claimed was omitted from the original complaint by mistake, on condition that the plaintiff refund and repay the amount of the judgment which had been paid, and upon compliance with certain other terms and conditions, although the effect of such amendment was to avoid the statute of limitations. The order allowing this amendment was affirmed on appeal, the court, through Mr. Justice DANFORTH, saying that "it was going a great way to

grant the relief sought, but the application was not without merit, and was one which, under a long series of authorities, the court had power to grant." Within this construction of the statute, supported by the authorities cited, the court had power to allow the amendment sought to be made in this case, although it would have added an additional ground for relief to that contained in the original complaint. It was not intended to change the real gist of the controversy between the parties, or the subject matter of the litigation. The original purpose of the suit was to determine the rights of the respective parties and their priorities in and to the real property in question; and the allegation of any fact material to the controversy, either as a ground of relief or as a defense, could, within the discretion of the trial court, in our opinion, be permitted by amendment before trial.

2. Nevertheless the statement of the new matter in the amended complaint as filed is clearly insufficient as a basis for the relief sought, because it is not alleged that the cancellation of the mortgages was made in ignorance of the defendants' judgment. It is unquestioned that a court of equity will, in a proper case, restore the lien of a mortgage cancelled by mistake; but before it will do so it must be made to appear that at the time of the cancellation or release the mortgagee did not know of the intervening lien. This is so elementary that its mere statement is sufficient. Manifestly, a mortgagee who, with complete knowledge of the existence of another lien on the mortgaged premises, deliberately cancels and releases his security, cannot subsequently ask a court of equity to re-

store him to his original priority. For this reason the allegations of the amended complaint concerning the mortgages in question and their cancellation were wholly immaterial, and the motion to strike them out ought to have been sustained. Nor can it be said that this defect was cured by the verdict—if it could be so cured—because there is not a scintilla of proof in the record anywhere to show that the mortgagee did not know of defendants' judgment at the time he released his mortgage. It follows, therefore, that the court below erred in entering a decree giving the cancelled mortgages priority over defendants' judgment, because there is neither allegation nor proof to support it.

3. The only question remaining for discussion is as to the validity of such a judgment. The contention is that it is void because entered by the clerk in vacation, under section 249 of Hill's Ann. Laws, which provides that, if no answer be filed within the time specified within the summons, or such further time as may have been granted by the court, or judge thereof, the clerk, upon the application of plaintiff, shall enter the default of the defendant, and immediately enter judgment against him for the amount specified in the summons. The contention is that this statute is unconstitutional and void, because it attempts to confer judicial powers upon the clerk. But this point was made and decided adversely to the plaintiff's contention in *Crawford* v. *Beard*, 12 Or. 447 (8 Pac. 537), and this decision has become a rule of property, and ought not at this late date be disturbed, whatever the view of the individual members of the court as now constituted may be upon the question here suggested. The

decree of the court below is therefore reversed, and the complaint dismissed, without prejudice, however, to another suit to restore the cancelled mortgages referred to in the amended complaint if the plaintiff shall be so advised.

REVERSED.

[Decided March 16, 1896; rehearing denied.]